Raymond Smith and : 
Monica Smith, h/w, :
        Appellants :
                      :
        v. :
                      :
Scott Township, Scott Township : 
Board of Supervisors; Scott Township : 
Planning Commission; Mike Gianetta, : 
in his capacity as Chairman of the : 
Board of Supervisors; Steven Russell, : 
in his capacity as Vice-Chairman of the : 
Board of Supervisors and supervisor in : 
charge of planning and zoning; Bob :   No. 1485 C.D. 2018
Noldy, in his capacity as supervisor :   Argued: September 10, 2019

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: October 9, 2019

        Raymond Smith and Monica Smith (together, Smiths) appeal from the order of the Court of Common Pleas of Lackawanna County (trial court) dated October 10, 2018 dismissing their complaint for issuance of a writ of mandamus brought against Scott Township, Scott Township Board of Supervisors (Board), Scott Township Planning Commission (Planning Commission), Mike Gianetta, in his capacity as Chairman of the Board, Steven Russell, in his capacity in charge of planning and zoning, and Bob Noldy, in his capacity as supervisor (collectively,

Township Appellees). The Smiths sought the writ to compel Township Appellees to enforce the Township of Scott, Lackawanna County, Pennsylvania, Subdivision and Land Development Ordinance (SALDO) and require the construction of a public road.[1] The trial court concluded that Township Appellees had no duty to enforce the SALDO and, therefore, dismissed the Smiths' complaint because they failed to establish a viable claim for mandamus as raised in the preliminary objection filed by Township Appellees.[2] We agree with the trial court that Township Appellees had no duty to enforce the SALDO and, additionally, that the Smiths had an adequate and appropriate remedy at law to obtain their requested relief. For these reasons, we affirm.

In 1983, Raymond C. Smith and Frances Schack, as executors of the estate of Bernice A. Smith, conveyed a 43.06-acre parcel of land located in Scott Township to Raymond C. Smith (Parent Parcel). Complaint for Issuance of Writ of Mandamus (Complaint) ¶ 12. Over a period of 35 years, the Parent Parcel had been subdivided several times and now exists as nine separate lots. *Id*. ¶ 13. Of relevance here, in November of 1991, Raymond C. Smith conveyed a 2.11-acre lot to the Smiths located at 1188 Lakeland Drive, Scott Township, Pennsylvania (Smith Property). *Id*. ¶¶ 10 & 16. Subsequently, Appellant Raymond Smith obtained a

---

[1] Scott Township adopted the SALDO pursuant to the authority provided by the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202. SALDO § 101.

[2] A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the complaint and all inferences reasonably deducible therefrom. *Clark v. Beard*, 918 A.2d 155, 158, n.4 (Pa. Cmwlth. 2007). The preliminary objection tests the legal sufficiency of the challenged pleading and will be sustained only in cases where the pleader "has clearly failed to state a claim for which relief can be granted." *Id*. When determining whether such an objection was properly granted, this Court must accept as true all properly pleaded material facts. *Id*. We confine our analysis to the complaint and decide whether sufficient facts have been pleaded to permit recovery if the facts are ultimately proven. *Id*.

minimum use permit from the Commonwealth of Pennsylvania, Department of Transportation and constructed an access easement private drive to allow access only to the Smith property from State Route 247 (Lakeland Drive). *Id*. ¶ 17. In early 2016, Gamliel Danziger (Danziger) expressed an interest in purchasing the remaining Parent Parcel "with the intention of subdividing the property and, eventually, developing the subdivided lots." *Id.* ¶ 18. On June 20, 2016, the Preliminary/Final Plans for the Estate of Raymond C. Smith Minor Subdivision were submitted to and approved by Township Appellees.[3] *Id.* ¶¶ 19-20.

On August 15, 2016, Robert Smith, as executor of the estate of Raymond C. Smith, conveyed 31.83 acres of the Parent Parcel to Danziger (Subdivision). Complaint ¶ 22. Thereafter, Danziger and his agents extended the private drive that provides access to the Smith property to the southeast in order to provide access to the lots "carved out" in the June 20, 2016 Minor Subdivision for construction and development purposes. *Id.* ¶ 23. On July 21, 2017, Township Appellees approved a revision to the Subdivision to increase the number of

---

[3] The SALDO defines "subdivision, minor" as:

> The division of a lot or tract of land into five (5) or fewer lots for the purpose, whether immediate or future, of transfer of ownership or of building development, provided that the proposed lots thereby created have frontage on an improved street or streets, and provided further that there is not created by the subdivision any new street, any required public improvements, or the need therefor. No parcel of land held in single or separate ownership at the time of application for a minor subdivision may be further subdivided into an aggregate of more than 5 lots, tracts or parcels of land at any time subsequent to that date except in accordance with the requirements for a major subdivision. A lot line adjustment shall be administered in the same manner as a minor subdivision.

SALDO § 106(C).

subdivided lots of the Parent Parcel to eight. Complaint ¶¶ 25-26. On December 14, 2017, Township Appellees approved another revision to the Subdivision to subdivide a 3.614-acre parcel of the Parent Parcel. *Id*. ¶ 28. The Smiths contend that Township Appellees violated the SALDO by failing to improve the private drive that gives access to their property into a public road upon issuing three approvals relating to the Subdivision on June 20, 2016, July 21, 2017 and December 14, 2017. *Id*. ¶¶ 21, 27 & 30.[4]

On March 21, 2018, the Smiths filed a complaint seeking the issuance of a writ of mandamus on Township Appellees to command them to enforce the SALDO by directing that the private drive be converted to a public road at the cost of the Township Appellees. Complaint Wherefore Clause. The Smiths further sought damages to reflect the diminution in their property value and requested any other legal or equitable relief as deemed appropriate. *Id*. Township Appellees responded with preliminary objections seeking dismissal of the complaint, with prejudice, because the Smiths (1) failed to set forth a viable claim for mandamus; (2) failed to set forth a viable claim against individual Township Appellees; and (3) have an adequate and appropriate remedy at law outside of mandamus. Preliminary Objections to Plaintiffs' Complaint ¶¶ 5-8.[5]

---

[4] In their complaint, the Smiths also assert that Township Appellees erred by approving the Subdivision as a minor subdivision because the Subdivision exceeds the allowable five lots for a minor subdivision and should have been approved as a major subdivision. Complaint ¶ 50. Further, the Smiths contend that the Subdivision cannot be considered minor as "there is no frontage on an improved street." *Id*. Though the Smiths raised this issue in their complaint, it is not before this Court for review.

[5] Township Appellees argue in their brief to this Court that they further objected to the complaint on the basis that it was barred by the statute of limitations. Township Appellees' Brief at 25, n.3. But, upon review of Township Appellees' preliminary objections, this objection was not raised before the trial court and, therefore, is waived. Pa.R.A.P. 302 (stating, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

After review of Township Appellees' preliminary objections, the trial court sustained the objection for failure to set forth a viable claim for mandamus and denied and dismissed the Smiths' complaint. Trial Court Order dated 10/10/18. In its opinion, the trial court explained that though the Planning Commission and Board have a duty to enforce the SALDO, the authority provided therein is discretionary and "does not require the municipality to 'seek out and initiate legal action.'" Trial Court Opinion at 6. The Smiths brought this appeal.

It is well established that mandamus is an extraordinary writ designed to compel an official's performance of a ministerial act[6] or mandatory duty. *Sinkiewicz v. Susquehanna Cty. Bd.*, 131 A.3d 541, 546 (Pa. Cmwlth. 2015); *Wilson v. Pa. Bd. of Prob. & Parole*, 942 A.2d 270, 272 (Pa. Cmwlth. 2008). The burden of proof falls on the party seeking this remedy to establish his or her legal right to relief. *Sinkiewicz*, 131 A.3d at 546. Mandamus requires (1) a clear legal right in the plaintiff, (2) a corresponding duty in the defendant, and (3) the lack of any other adequate and appropriate remedy at law. *Id.* The purpose of mandamus is not to establish legal rights but only to enforce those rights which are already established. *Id.* As a "high prerogative writ, mandamus is rarely issued and never to interfere with a public official's exercise of discretion." *Id.*

Before this Court, the Smiths contend that the trial court erred when it concluded that Township Appellees do not have a mandatory duty to enforce the provisions of the SALDO that require the construction of a public road. Smiths' Brief at 13. The Smiths argue that Township Appellees approved the Subdivision

---

[6] A ministerial act is an act that a public officer is required to perform upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority. *Rose Tree Media Sch. Dist. v. Dep't of Public Instruction*, 244 A.2d 754, 755 (Pa. 1968).

5

to allow for the creation of multiple lots and, once they gave their approvals, Township Appellees had a mandatory duty to abide by the lot and street standards of the SALDO and to "cause a public road to be constructed."[7] *Id.* at 19. Township

---

[7] The Smiths rely on several provisions of the SALDO to support their assertion that once multiple lots are created a public road must be constructed. The SALDO defines "lot or zone lot," "driveway" and "street" as follows:

> LOT OR ZONE LOT – A piece or parcel of land occupied or intended to be occupied by a principal building or group of such buildings and accessory buildings, or utilized for a principal use and uses accessory or incidental to the operation thereof, together with such open spaces as required by this [o]rdinance, and *having frontage on a public street*.

> DRIVEWAY – A private vehicular service road *providing access to a single lot, building, dwelling or garage*.

> STREET – *A public or private thoroughfare* with a right-of-way not less than thirty (30) feet in width if in existence prior to the passage of this ordinance or a right-of-way of not less than fifty (50) feet in width if established subsequent to the passage of this ordinance which *affords the principal means of access to abutting property, including avenue, place, way, drive, land boulevard, highway, road and any other thoroughfares except an alley*.

SALDO § 106(C) (emphasis added). According to the Smiths' expert, "[t]hese three definitions, in combination, indicate a driveway is not permitted to serve more than a single lot or dwelling, except under Section 525.E(5) . . . and anything more than a single lot or dwelling would necessarily be required to meet the street standards of [SALDO]." Smiths' Brief at 10. Section 525.E(5) of the SALDO addresses "private drives" and explains that they can service more than two single-family dwellings in certain circumstances not present here. SALDO § 525.E(5); Smiths' Brief at 10-11. Further, the Smiths rely on the following:

> *If there is a potential for resubdivision of either of the lots to be serviced by a private drive such that eventually more than two lots might result*, the subdivider shall provide additional right-of-way as necessary to serve the maximum potential number of lots. All drainage plans shall be subject to approval of the Township engineer.

Appellees failed to require the construction of a public street and, therefore, the Smiths ask this Court to require them to perform their mandatory duty and enforce the SALDO. *Id*. at 23.

The Smiths rely on Section 202D of the SALDO to support their argument. Section 202D provides that "it is specifically designated that it shall be the duty of the governing body to enforce this Ordinance." SALDO § 202D. The governing body is defined as the Board. *Id*. § 106(C). The Smiths assert that because the SALDO requires the Board to enforce its provisions by use of the term "shall," then it must "do something" to abate the ongoing violations of lot and street standards resulting in harm to their property. Smiths' Brief at 18 & 23. We agree that the SALDO requires the Board to enforce it but this provision simply identifies *who* is responsible to enforce the SALDO and to ensure that the entity identified, the Board, is going to perform the task assigned, enforcement. Section 202D does not explain *how or when* the Board is to enforce the SALDO. Rather, other provisions address the enforcement powers granted to the Board, specifically Section 202F.

Section 202F of the SALDO provides that:

> [i]n addition to other remedies, the municipality *may* institute and maintain appropriate actions by law or in equity to restrain, *correct or abate violations*, to prevent unlawful construction, to recover damages and to prevent illegal occupancy of a building, structure or premises . . . .

SALDO § 202F (emphasis added). By use of the term "may" the SALDO provides that Scott Township, the Board, has the option or discretion to institute and maintain

---

SALDO § 525.E(5) (emphasis added); Smiths' Brief at 11. The Smiths also cite to Section 503L of the SALDO which provides that "[n]o street required to provide access shall be a private street, except as otherwise provided herein." SALDO § 503L; Smiths' Brief at 10.

actions in law or in equity to correct or abate violations of the SALDO.[8] We agree with the trial court that the SALDO does not impose a mandatory duty upon the Board to institute an enforcement action or to do something to "abate the damages incurred" by the Smiths resulting from the lack of a public street. Rather, this language gives the Board the ability to exercise its prosecutorial discretion, which is a matter beyond judicial review.

In *Sinkiewicz*, this Court examined language almost identical to the language at issue in the present case, codified in the Susquehanna County Subdivision and Land Development Ordinance, to conclude that Susquehanna County had no mandatory duty to enforce the SALDO. *Sinkiewicz*, 131 A.3d at 542. In *Sinkiewicz*, High Cadence owned property consisting of two lots. *Id*. at 543. Over several years, portions of the lots had been used by a variety of business enterprises, including truck repair, equipment storage, pipeline fabrication and fracking water supply, with High Cadence's permission. *Id*. Homeowners owning property adjacent to the two lots complained to the county that High Cadence had not obtained approval to subdivide the lots. *Id*. The planning commission informed homeowners that no action would be taken because it did not agree that any subdivision had occurred. *Id*.

In response, homeowners in *Sinkiewicz* brought a complaint in mandamus seeking to, in part, compel the county to require High Cadence to file a subdivision plan for the lots. *Id*. at 544. The county filed preliminary objections in the nature of a demurrer asserting that the homeowners' mandamus action was

---

[8] Our interpretation is further supported by our observation that the SALDO does not use the term "shall" in this provision. *See* SALDO § 106A(5) (explaining that when interpreting the SALDO "[t]he term shall is mandatory"); *see also* SALDO § 106B (providing that "[a]ny word or term not defined herein shall be used within a meaning of standard usage"); *accord* Merriam-Webster, available at https://www.merriam-webster.com/dictionary/may (last visited October 7, 2019) (defining the term "may" as "have the ability to" or "be free to").

8

improper because it sought to compel the county's exercise of discretion. *Id*. at 544, n.4. The trial court overruled the preliminary objection, held a hearing and issued an order denying homeowners' complaint on the merits. *Id*. at 544, n.5 & 545. Homeowners appealed to this Court. *Id*. at 545.

In affirming the trial court, this Court in *Sinkiewicz* held, in pertinent part, that homeowners could not, through mandamus, compel the exercise of the county's discretion to enforce the SALDO. *Id*. at 548. In so concluding, this Court reviewed the following portion of the SALDO, which provided:

> [i]n addition to other remedies, the County may institute and maintain appropriate actions by law or in equity to restrain, correct or abate violations to prevent unlawful construction, to recover damages and to prevent illegal occupancy of a building, structure or premises.

*Id*. at 547. This Court explained that, with emphasis on the word "may," this provision "does not require the [c]ounty to seek out and initiate legal actions against wayward property owners." *Id*. at 548. Rather, this language gives the county prosecutorial discretion to enforce the SALDO provisions and such discretion is "a matter beyond judicial review regardless of the form of action." *Id*. This Court noted that, "[t]he exercise of an agency's prosecutorial discretion is not subject to judicial review, any more than the discretion of a criminal prosecutor not to prosecute a criminal case can be review[ed] by courts." *Id*.

Relying on *In re: Frawley*, 364 A.2d 748,749 (Pa. Cmwlth. 1976), this Court further explained that in exercising discretion not to prosecute, such action is not "adjudicatory in nature" as:

> Executive officers of government who are impressed with *discretionary powers of prosecution often choose not to*

*exercise those powers upon policy considerations wholly apart from the possibility that sufficient cause might exist to support a prosecutorial action.* Incident, however, to the constitutional separation of powers between the executive and judicial branches of government, *courts cannot interfere with the executive's free exercise of such discretionary determinations*.

*Sinkiewicz*, 131 A.3d at 548 (bracket omitted) (emphasis in original and added). This Court in *Sinkiewicz* concluded that the SALDO "does not impose a mandate upon the [c]ounty to enforce the SALDO." *Id*. at 549. Likewise, here, Section 202F of the SALDO does not impose a mandate on the Board to initiate an action or "do something" to abate an ongoing violation of the SALDO, as this is a matter within the Board's discretion. Because the SALDO does not impose a mandatory duty on the Board to exercise its enforcement power, a writ of mandamus does not lie.

Nevertheless, the Smiths contend that the analysis of this Court in *Sinkiewicz* does not apply here because they are not requesting that Township Appellees approve or disapprove subdivision plans. Smiths' Brief at 22. We agree that the Smiths are not seeking an order to compel Township Appellees to approve or disapprove subdivision plans, nor are they seeking an order to require the filing of subdivision plans, as was the case in *Sinkiewicz*. Instead, the Smiths assert that the subdivision plans already approved by Township Appellees violate the SALDO. But, the Smiths could have challenged the Township Appellees' approvals when they were rendered.[9]

---

[9] The Smiths alleged the lack of adequate remedy at law as required by Pennsylvania Rule of Civil Procedure No. 1095(6). Complaint ¶ 62. But this assertion is a conclusion of law, rather than an allegation of fact, and we are not required to accept it as true at this stage in the proceeding. *See Stodghill v. Pa. Dep't of Corr.*, 150 A.3d 547, 549 (Pa. Cmwlth. 2016) (explaining that this Court need not accept as true conclusions of law when reviewing preliminary objections to a complaint), *aff'd*, 177 A.3d 182 (Pa. 2018) (Mem.).

Specifically, the Smiths allege that Township Appellees approved the June 20, 2016 Subdivision proposal and the July 21, 2017 and December 14, 2017 revisions to the Subdivision. Complaint ¶¶ 20, 26 & 35. Township Appellees rendered these approvals pursuant to Section 909.1 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, which provides that:

> [t]he governing body or . . . *the planning agency, if designated, shall have exclusive jurisdiction to hear and render final adjudications* in the following matters . . . [a]ll applications pursuant to section 508[10] for approval of subdivisions or land developments under Article V. . . .

53 P.S. § 10909.1(b)(2). The SALDO provides that "[i]t is the intention of the [Board] to exercise, through the adoption of this Ordinance, the maximum lawful jurisdiction over subdivision and land development permitted by the [MPC]," including any subdivision, land development or resubdivision. SALDO § 200.

The Smiths allege that Township Appellees failed to comply with the SALDO when exercising its approval authority because Township Appellees failed to follow the lot and street requirements to convert the private drive accessing their property into a public street. Complaint ¶¶ 21, 27 & 30. Due to this failure, the Smiths allege that "*[s]ince July 2017 and prior to actual approval of the July 21, 2017*" Subdivision revision, several construction vehicles enter and exit the Subdivision daily using the private drive as the "only means of ingress and egress." *Id*. ¶ 53 (emphasis added). The Smiths contend that, as a result, construction trucks

---

[10] Section 508 of the MPC addresses approval of plats. 53 P.S. § 10508. Plats are defined as "the map or plan of a subdivision or land development, whether preliminary or final." Section 107 of the MPC, 53 P.S. § 10107.

11

have been using their property and have blocked the entrance and exit to their property. *Id.* ¶¶ 54-55. The Smiths aver that the private drive in its current condition "poses a serious risk to the health, safety, comfort, convenience, security and welfare" to them and their property.[11] *Id.* ¶ 56.

Accepting these allegations as true, the Smiths had notice that Township Appellees' failure to comply with the SALDO caused the Smiths harm as of July 2017. The Smiths, therefore, could have challenged the Township Appellees' July 21, 2017 and December 14, 2017 revisions to the Subdivision by filing an appeal with the court of common pleas to assert that their approvals did not comply with the SALDO. As noted above, the Township Appellees had exclusive jurisdiction to approve the Subdivision application and its subsequent revisions, which are final adjudications subject to appeal. *See* 53 P.S. § 10909.1(b)(2). To secure review of any decision made under the MPC, objectors, such as the Smiths, must follow the procedures provided in Article X-A pertaining to court appeals. *See* Section 1001-A, added by Section 101 of the Act of December 21, 1998, P.L. 1329, 53 P.S. § 11001-A (providing that the procedures set forth in this article "shall constitute the *exclusive mode* for securing review of any *decision*" deemed to have been made under the MPC) (emphasis added). Section 11002-A(a), contained in Article X-A, provides that:

> *All appeals from all land use decisions rendered pursuant to Article IX* [including subdivision approvals as provided in Section 909.1] *shall be taken to the court of common*

---

[11] In their complaint's wherefore clause, the Smiths requested damages to reflect the diminution of property value and any other legal or equitable relief as deemed appropriate. Arguably, the Smiths do not allege specific facts to support their claim for damages. Further, before this Court, the Smiths offer no arguments relating to their request for damages nor do they allege error by the trial court for failing to address damages.

*pleas of the judicial district wherein the land is located* and shall be filed within 30 days after entry of the decision . . . .

53 P.S. § 11002-A(a); *see Hallett's Wood Homeowners' Ass'n v. Upper Mt. Bethel Twp. Planning Comm'n*, 688 A.2d 748, 750 (Pa. Cmwlth. 1997) (holding that objectors must file a timely appeal with the trial court to contest township's deemed approval of a subdivision plan as they were on notice that a decision was forthcoming); *see also Christman v. Twp. of Douglass*, 602 A.2d 457, 458 (Pa. Cmwlth. 1992) (holding that the proper procedure to challenge denial of a proposed subdivision of land is properly brought in the court of common pleas in the county where the affected land is located upon receiving notice of the decision).

Though Township Appellees have discretion to grant waivers from the SALDO requirements if a developer cannot meet the requirements, *Hallett's*, 688 A.2d at 751, the Smiths could have appealed to the court of common pleas to obtain a determination as to whether Township Appellees erred or abused their discretion by rendering their subdivision approvals, certainly the July 21, 2017 and December 14, 2017 revisions, without requiring the construction of a public road. Because the Smiths had an adequate and appropriate remedy at law to obtain the relief they seek, the Smiths' request for a writ of mandamus cannot lie for this reason as well.

Because Township Appellees do not have a mandatory duty to enforce the SALDO and the Smiths had an adequate remedy at law to obtain relief on their complaint, they failed to establish a viable claim for mandamus. Accordingly, we affirm the trial court's order granting the preliminary objection of Township Appellees.

_____
CHRISTINE FIZZANO CANNON, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Raymond Smith and          :
Monica Smith, h/w,        :
          Appellants    :
                     :
        v.            :
                     :
Scott Township, Scott Township  :
Board of Supervisors; Scott Township  :
Planning Commission; Mike Gianetta,  :
in his capacity as Chairman of the  :
Board of Supervisors; Steven Russell,  :
in his capacity as Vice-Chairman of the  :
Board of Supervisors and supervisor in  :
charge of planning and zoning; Bob  :   No. 1485 C.D. 2018
Noldy, in his capacity as supervisor  :

# O R D E R

AND NOW, this 9th day of October, 2019, the order of the Court of Common Pleas of Lackawanna County dated October 10, 2018 is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge